## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS

| | |
|---|---|
| JANA K. DIAMOND, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>FIREFLY AEROSPACE INC., JASON KIM, DARREN MA, REMINGTON WU, JORDI PAREDES GARCIA, KIRK KONERT, THOMAS MARKUSIC, MARC WEISER, JED MCCALEB, THOMAS ZURBUCHEN, and CHRISTOPHER EMERSON,<br><br>Defendants. | Case No. 1:25-cv-1812<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Jana K. Diamond ("Plaintiff"), individually and on behalf of all others similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants, alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of the Defendants' public documents, conference calls and announcements made by Defendants, United States ("U.S.") Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Firefly Aerospace Inc. ("Firefly" or the "Company"), analysts' reports and advisories about the Company, and information readily obtainable on the Internet. Plaintiff believes that substantial, additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

1

## NATURE OF THE ACTION

1.      This is a federal securities class action on behalf of a class consisting of all persons and entities other than Defendants that purchased or otherwise acquired: (a) Firefly common stock pursuant and/or traceable to the Offering Documents (defined below) issued in connection with the Company's initial public offering conducted on or about August 7, 2025 (the "IPO" or "Offering"); and/or (b) Firefly securities between August 7, 2025 and September 29, 2025, both dates inclusive (the "Class Period").  Plaintiff pursues claims against the Defendants under the Securities Act of 1933 (the "Securities Act") and the Securities Exchange Act of 1934 (the "Exchange Act").

2.      Firefly operates as a space and defense technology company and purports to "provid[e] mission solutions for national security, government, and commercial customers with an established track record for success."  Operating through two business segments, Launch and Spacecraft Solutions, Firefly purports to "enable[] government and commercial customers to launch, land, and operate in space – anywhere, anytime."

3.      One of Firefly's flagship launch vehicles is the Alpha, a two-stage rocket which the Company claims is "the only provider of small size launch that has achieved orbit and addresses a critical gap in the market in the 1,000 kilograms category."

4.      The Alpha rocket has had a troubled development history.  Of the Alpha rocket's six attempted flights, four have ended in failure, with the Alpha failing to achieve its intended orbit or exploding within minutes of launch in each instance.  After Firefly's sixth attempted flight of the Alpha rocket failed on April 29, 2025, the Federal Aviation Administration ("FAA") ordered Firefly to investigate the root cause of this failure, identify the corrective actions necessary to avoid repeating it, and submit a report detailing its findings.  The FAA also prohibited Firefly from

conducting further attempts to launch the Alpha rocket until it reviewed and accepted Firefly's completed investigation report.

5.       Nevertheless, at all relevant times, Firefly has sought to reassure investors that the Alpha rocket is both "flight proven" and "commercially available."

6.       On July 11, 2025, Firefly filed a registration statement on Form S-1 with the SEC in connection with the IPO, which, after several amendments, was declared effective by the SEC on August 6, 2025 (the "Registration Statement").

7.       On August 8, 2025, Firefly filed a prospectus on Form 424B4 with the SEC in connection with the IPO, which incorporated and formed part of the Registration Statement (the "Prospectus" and, together with the Registration Statement, the "Offering Documents").

8.       Firefly conducted its August 7, 2025 IPO pursuant to the Offering Documents, selling 19.296 million shares of common stock priced at $45.00 per share.

9.       The Offering Documents were negligently prepared and, as a result, contained untrue statements of material fact or omitted to state other facts necessary to make the statements made not misleading and were not prepared in accordance with the rules and regulations governing their preparation.  Additionally, throughout the Class Period, Defendants made materially false and misleading statements regarding the Company's business, operations, and prospects. Specifically, the Offering Documents and Defendants made false and/or misleading statements and/or failed to disclose that: (i) Firefly had overstated the demand and growth prospects for its Spacecraft Solutions offerings; (ii) Firefly had overstated the operational readiness and commercial viability of its Alpha rocket program; (iii) the foregoing, once revealed, would likely have a material negative impact on the Company; and (iv) as a result, the Offering Documents and

Defendants' public statements throughout the Class Period were materially false and/or misleading and failed to state information required to be stated therein.

10.     On September 22, 2025, Firefly reported its financial results for the second quarter of 2025, its first earnings report as a public company.  Among other items, Firefly reported a loss of $80.3 million, or $5.78 per share, compared to $58.7 million, or $4.60 per share, for the same quarter in 2024.  Firefly also reported revenue of $15.55 million, below analyst estimates of $17.25 million and down 26.2% from the same quarter in 2024.  Significantly, Firefly reported revenue of only $9.2 million in its Spacecraft Solutions business segment, representing a 49% year-over-year decrease.

11.     On this news, Firefly's stock price fell $7.58 per share, or 15.31%, to close at $41.94 per share on September 23, 2025.

12.     Less than one week later, on September 29, 2025, Firefly disclosed that "the first stage of Firefly's Alpha Flight 7 rocket experienced an event that resulted in a loss of the stage." Notably, Firefly CEO Jason Kim stated during the September 22, 2025 earnings call that the Company "expect[ed] to launch Flight 7 in the coming weeks."  Following on the heels of Firefly's failed April 2025 Alpha rocket launch, the Alpha 7 test failure raised significant questions about Firefly's ability to meet its commercial launch commitments and the viability of the Company's technology.

13.     On this news, Firefly's stock price fell $7.66 per share, or 20.73%, to close at $29.30 per share on September 30, 2025.

14.     As of the time this Complaint was filed, Firefly's stock price continues to trade significantly below the $45.00 per share Offering price, damaging investors.

15.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

16.     The claims asserted herein arise under and pursuant to Sections 11 and 15 of the Securities Act (15 U.S.C. §§ 77k and 77o), as well as Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

17.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, Section 22 of the Securities Act (15 U.S.C. § 77v), and Section 27 of the Exchange Act (15 U.S.C. § 78aa).

18.     Venue is proper in this District pursuant to Section 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)).  Firefly is headquartered in this District, Defendants conduct business in this District, and a significant portion of Defendants' actions took place within this District.

19.     In connection with the acts alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications, and the facilities of the national securities markets.

## PARTIES

20.     Plaintiff, as set forth in the attached Certification, purchased or otherwise acquired Firefly common stock pursuant and/or traceable to the Offering Documents issued in connection with the IPO and/or Firefly securities during the Class Period, and suffered damages as a result

5

of the federal securities law violations and false and/or misleading statements and/or material omissions alleged herein.

21.     Defendant Firefly is a Delaware corporation with principal executive offices located at 1320 Arrow Point Drive #109, Cedar Park, Texas 78613.  The Company's common stock trades in an efficient market on the Nasdaq Global Market ("NASDAQ") under the ticker symbol "FLY."

22.     Defendant Jason Kim ("Kim") has served as Firefly's Chief Executive Officer at all relevant times.  Defendant Kim signed or authorized the signing of the Registration Statement filed with the SEC.

23.     Defendant Darren Ma ("Ma") has served as Firefly's Chief Financial Officer at all relevant times.  Defendant Ma signed or authorized the signing of the Registration Statement filed with the SEC.

24.     Defendant Remington Wu ("Wu") has served as Firefly's Chief Accounting Officer at all relevant times.  Defendant Wu signed or authorized the signing of the Registration Statement filed with the SEC.

25.     Defendant Jordi Paredes Garcia ("Garcia") has served as Alpha Chief Engineer at Firefly at all relevant times.  Defendant Garcia made materially false and misleading statements concerning the Alpha rocket.

26.     Defendants Kim, Ma, Wu, and Garcia are collectively referred to herein as the "Exchange Act Individual Defendants."

27.     The Exchange Act Individual Defendants possessed the power and authority to control the contents of Firefly's SEC filings, press releases, and other market communications. The Exchange Act Individual Defendants were provided with copies of Firefly's SEC filings and

press releases alleged herein to be misleading prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or to cause them to be corrected. Because of their positions with Firefly, and their access to material information available to them but not to the public, the Exchange Act Individual Defendants knew that the adverse facts specified herein had not been disclosed to and were being concealed from the public, and that the positive representations being made were then materially false and misleading. The Exchange Act Individual Defendants are liable for the false statements and omissions pleaded herein.

28.     Firefly and the Exchange Act Individual Defendants are collectively referred to herein as the "Exchange Act Defendants."

29.     Defendant Kirk Konert ("Konert") has served as a Director of Firefly at all relevant times.

30.     Defendant Thomas Markusic ("Markusic") has served as a Director of Firefly at all relevant times.

31.     Defendant Marc Weiser ("Weiser") has served as a Director of Firefly at all relevant times.

32.     Defendant Jed McCaleb ("McCaleb") has served as a Director of Firefly at all relevant times.

33.     Defendant Thomas Zurbuchen ("Zurbuchen") has served as a Director of Firefly at all relevant times.

34.     Defendant Christopher Emerson ("Emerson") has served as a Director of Firefly at all relevant times.

35.     Defendants Konert, Markusic, Weiser, McCaleb, Zurbuchen, and Emerson are collectively referred to herein as the "Securities Act Individual Defendants." Each of the Securities

Act Individual Defendants signed or authorized the signing of the Registration Statement filed with the SEC.

36.    As directors, executive officers, and/or major shareholders of the Company, the Securities Act Individual Defendants participated in the solicitation and sale of Firefly common stock in the IPO for their own benefit and the benefit of the Company.  The Securities Act Individual Defendants were key members of the IPO working group and executives of the Company who pitched investors to purchase the shares sold in the IPO.

37.    Firefly and the Securities Act Individual Defendants are collectively referred to herein as the "Securities Act Defendants."

38.    The Exchange Act and Securities Act Defendants are sometimes, in whole or in part, collectively referred to herein as "Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background

39.    Firefly operates as a space and defense technology company and purports to "provid[e] mission solutions for national security, government, and commercial customers with an established track record for success."  Operating through two business segments, Launch and Spacecraft Solutions, Firefly purports to "enable[] government and commercial customers to launch, land, and operate in space – anywhere, anytime."

40.    One of Firefly's flagship launch vehicles is the Alpha, a two-stage rocket which the Company claims is "the only provider of small size launch that has achieved orbit and addresses a critical gap in the market in the 1,000 kilograms category."

41.    The Alpha rocket has had a troubled development history.  Of the Alpha rocket's six attempted flights, four have ended in failure, with the Alpha failing to achieve its intended orbit

or exploding within minutes of launch in each instance. After Firefly's sixth attempted flight of the Alpha rocket failed on April 29, 2025, the Federal Aviation Administration ("FAA") ordered Firefly to investigate the root cause of this failure, identify the corrective actions necessary to avoid repeating it, and submit a report detailing its findings. The FAA also prohibited Firefly from conducting further attempts to launch the Alpha rocket until it reviewed and accepted Firefly's completed investigation report.

42.    Nevertheless, at all relevant times, Firefly has sought to reassure investors that the Alpha rocket is both "flight proven" and "commercially available."

43.    On July 11, 2025, Firefly filed a registration statement on Form S-1 with the SEC in connection with the IPO, which, after several amendments, was declared effective by the SEC on August 6, 2025.

44.    On August 8, 2025, Firefly filed a prospectus on Form 424B4 with the SEC in connection with the IPO, which incorporated and formed part of the Registration Statement.

45.    Pursuant to the Offering Documents, Firefly conducted the IPO, selling 19.296 million shares of common stock priced at $45.00 per share.

46.    The morning that Firefly conducted the IPO, Defendant Kim appeared on CNBC during premarket hours. Defendant Kim stated that Firefly's "revenue-generating" products were "all mature," touted the Alpha rocket's "flight heritage," and highlighting the Spacecraft Solution segment's successful lunar landing:

> We've really set up ourselves for going public since our inception. **We've got four revenue-generating products that are all mature, and we've got flight heritage on our Alpha rocket just on our second launch. And we've landed on the moon. We're the first company to commercially land on the moon successfully – upright, stable.** And everybody talks about the landing but it's more about the

mission, the fourteen day surface operations and provided all that data to NASA and all ten NASA science experiments got all the missions objectives completed.[1]

**Materially False and Misleading Statements Issued in the Offering Documents**

47.     The Offering Documents provided investors with an overview of the Company, describing Firefly as "one of the only U.S.-based commercial companies **currently equipped to provide reliable access to launch**, transit, and operations in space."  The Offering Documents further stated that the Company was "poised to grow in this attractive market."

48.     The Offering Documents positioned the Alpha rocket as "ready" for "orbit," stating in relevant part: "**Our Alpha launch vehicle is the only orbit-ready U.S. rocket** in the 1,000 kilograms payload vehicle class."

49.     In the Offering Documents, Firefly touted its "reliability-first approach" when building launch vehicles including the Alpha.  The Offering Documents stated in relevant part:

> **We have taken a reliability-first approach to building our launch vehicles**, landers, and spacecraft. **We successfully built the world's largest all-composite launch vehicle, our Alpha rocket.** Our rockets are built using lightweight and strong carbon fiber, leveraging automated fiber placement technology to ensure unified production methodology across all of our product lines.

50.     Firefly also discussed the "operations success" of the Alpha rocket in the Offering Documents and claimed the Company was "on track" to assist customers with a variety of objectives. The Offering Documents state in relevant part:

> Our growth opportunity is dependent on our continued ability to expand our addressable launch market, win lunar and orbital missions and expand our portfolio of services related to those offerings. **For instance, building on our launch, lander, transit, and operations success with Alpha and Blue Ghost, we are on track for our spacecraft offerings to facilitate payload hosting services, transport services, utility services, and data services** in [Low Earth Orbit], [Medium Earth Orbit], and [Geostationary Orbit].

---

[1] All emphases herein added unless otherwise stated.

51.    Also in the Offering Documents, Firefly highlighted the purported track record in its Spacecraft Solutions business segment, stating that it "proves our capability to execute on challenging milestone" and that Firefly held a "competitive advantage" in this segment of its business:

> We are one of the few providers of lunar lander services with multiple planned launches under contracts and a multi-capability offering. **Our successful Blue Ghost mission this year proves our capability to execute on challenging milestones**: enter lunar orbit, measure radiation levels and the magnetic field in transit, land on the Moon, study the surface, and collect the most amount of data ever on the environment. **We expect our significant competitive advantage will grow as we continue to execute on our upcoming Blue Ghost missions,** with contracts already underway as part of NASA's $2.6 billion CLPS program.

52.    The statements referenced in ¶¶ 47–51 were materially false and misleading because the Offering Documents were negligently prepared and, as a result, contained untrue statements of material fact or omitted to state other facts necessary to make the statements made not misleading and were not prepared in accordance with the rules and regulations governing their preparation. Specifically, the Offering Documents made false and/or misleading statements and/or failed to disclose that: (i) Firefly had overstated the demand and growth prospects for its Spacecraft Solutions offerings; (ii) Firefly had overstated the operational readiness and commercial viability of its Alpha rocket program; (iii) the foregoing, once revealed, would likely have a material negative impact on the Company; and (iv) as a result, the Offering Documents and Defendants' public statements throughout the Class Period were materially false and/or misleading and failed to state information required to be stated therein.

**Materially False and Misleading Statements Issued During the Class Period**

53.    The Class Period begins on August 7, 2025, when Firefly's common stock began publicly trading on the NASDAQ pursuant to the materially false and misleading statements or omissions contained in the Offering Documents, as referenced in ¶¶ 47–51, *supra*, which related

11

to the commercial and technological viability of the Alpha rocket and the demand and growth prospects for the Company's Spacecraft Solutions offerings.

54.     Further, at all relevant times throughout the Class Period and as of the time this Complaint was filed, Defendants have consistently described the Alpha rocket as "[r]eady for launch" on Firefly's public-facing website.  Reflecting its commercial significance to the Company, Firefly's website includes a page dedicated to the Alpha rocket specifically.  Under the heading "**Ready for Launch**," the relevant section of Firefly's website states:

> Firefly's Alpha rocket is equipped to launch more than 1,000 kg to low Earth orbit for commercial, civil, and national security missions. **The flight-proven vehicle is designed to support regular, rapid, and reliable launches with direct, on-demand deliveries when and where customers need to fly.** Alpha can be launched domestically or internationally through Firefly's launch facilities at the Vandenberg Space Force Base in California and new launch capabilities coming soon at the Mid-Atlantic Regional Spaceport (MARS) on Wallops Island, Virginia as early as 2026 and at the Esrange Space Center in Sweden as early as 2027.[2]

55.     On August 26, 2025, Firefly announced that the FAA had granted it clearance to conduct further launches of the Alpha rocket, after the agency previously prohibited Firefly from further launch attempts pending investigation of the failure of its April 29, 2025 launch attempt. The Company stated in relevant part:

> The company conducted a thorough investigation with the FAA and in parallel assembled an Independent Review Board of multiple government agencies, customers, and industry experts. The findings confirmed Firefly's flight safety system performed nominally through all phases of flight. Both Alpha stages landed safely in the Pacific Ocean and the launch posed no risk to public safety.
>
> […]
>
> Fortunately, **the corrective actions are straight forward**: increase thermal protection system thickness on Stage 1 and reduce angle of attack during key phases of the flight. **Corrective actions have already been implemented**.

---

[2] Available at https://fireflyspace.com/alpha/ (last accessed Nov. 10, 2025).

"At Firefly, technical challenges aren't roadblocks — they're catalysts," said Jordi Paredes Garcia, Alpha Chief Engineer at Firefly Aerospace. "Each mission provides us more data and enables us to continuously improve. **Following all the lessons learned and corrective actions implemented, we were able to further increase Alpha's reliability**. We are grateful to the FAA, our customers, and the independent review board for their continued support through this process."

**With** FAA approval to return to flight and **corrective actions implemented**, Firefly is now working to determine the next available launch window for Alpha Flight 7.

56.    The statements referenced in ¶¶ 47–51, 54–55 were materially false and misleading because Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and compliance policies. Specifically, the Exchange Act Defendants made false and/or misleading statements and/or failed to disclose that: (i) Firefly had overstated the demand and growth prospects for its Spacecraft Solutions offerings; (ii) Firefly had overstated the operational readiness and commercial viability of its Alpha rocket program; (iii) the foregoing, once revealed, would likely have a material negative impact on the Company; and (iv) as a result, the Defendants' public statements throughout the Class Period were materially false and/or misleading and failed to state information required to be stated therein.

**The Truth Begins to Emerge**

57.    On September 22, 2025, Firefly reported its financial results for the second quarter of 2025. Among other items, Firefly reported a loss of $80.3 million, or $5.78 per share, compared to $58.7 million, or $4.60 per share, for the same quarter last year. Firefly also reported revenue of $15.55 million, below analyst estimates of $17.25 million and down 26.2% from the same quarter last year. Firefly reported Spacecraft Solutions revenue of $9.2 million, down from $50.69 million in the previous quarter and down from $18.09 million for the same quarter last year.

13

58.    On this news, Firefly's stock price fell $7.58 per share, or 15.31%, to close at $41.94 per share on September 23, 2025.

59.    Notwithstanding the foregoing disclosures and resulting drop in Firefly's share price, Firefly's stock continued to trade at artificially inflated prices due to Defendants' continued false and misleading statements about the viability and operational readiness of its Alpha rocket. In its Q2 2025 Form 10-Q, the Company further stated in relevant part: "**We expect to continue to ramp up our launch cadence as we increase our production rate on Alpha rockets**, and complete development of Eclipse.

60.    Also on September 22, 2025, Firefly conducted a conference call concerning its financial results for the second quarter of 2025 (the "Q2 2025 Earnings Call"). During that call, Defendant Kim touted the Alpha rocket's capabilities, stating in relevant part "[a]ll of **Alpha's proven technologies** are scaled up to our larger reusable Eclipse rocket, capable of carrying 16 tons to orbit."

61.    During the same earnings call, Defendant Kim further discussed the Alpha rocket's capabilities and various use cases, stating in relevant part:

> First off, Alpha. **It is a commercially available rocket**, and we're increasing our production capacity to deliver more and more Alphas per year. **It can support launching surrogate targets for the Golden Dome missions. It could also support launching test missions of things like hypersonic missiles, as well as space-based interceptors. It also can serve as an operational rocket as well.**

62.    Defendant Kim also discussed the Company's plan to resume testing the Alpha rocket, even though four of the previous six tests had been failures and the FAA had granted the Company clearance to resume testing just four weeks earlier. In response to an analyst's question concerning the "timing of [Alpha] flight seven and eight," Defendant Kim stated that the Company expected to attempt its seventh flight of the Alpha rocket in the "coming weeks":

Q: With the FAA approving return to flight for Alpha, how are you thinking about the timing of flight seven and eight, and how does that feed into your targeted launches for 2026? What are the range of potential outcomes for next year, you know, thinking about production capacity versus the current backlog?

Kim: Thank you . . . . We received our FAA return to flight determination at the end of August. **We expect to launch flight seven in the coming weeks.** If you saw our slides in the Alpha slide, you could see that **flight seven is in a mature state right next to flight eight in a mature state**.

63.     The statements referenced in ¶¶ 59–62 were materially false and misleading because Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and compliance policies.  Specifically, the Exchange Act Defendants made false and/or misleading statements and/or failed to disclose that: (i) Firefly had overstated the operational readiness and commercial viability of its Alpha rocket program; (ii) the foregoing, once revealed, would likely have a material negative impact on the Company; and (iii) as a result, the Defendants' public statements throughout the Class Period were materially false and/or misleading and failed to state information required to be stated therein.

64.     Then, on September 29, 2025, Firefly disclosed that "[d]uring testing at Firefly's facility in Briggs, Texas, the first stage of Firefly's Alpha Flight 7 rocket experienced an event that resulted in a loss of the stage."

65.     On this news, Firefly's stock price fell $7.66 per share, or 20.73%, to close at $29.30 per share on September 30, 2025.

66.     As of the time this Complaint was filed, Firefly's stock price continues to trade below the $45.00 per share Offering price, damaging investors.

67.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## <u>PLAINTIFF'S CLASS ACTION ALLEGATIONS</u>

68.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class consisting of all persons and entities other than Defendants that purchased or otherwise acquired Firefly common stock pursuant and/or traceable to the Offering Documents issued in connection with the IPO, and/or Firefly securities during the Class Period; and were damaged thereby (the "Class").  Excluded from the Class are Defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendants have or had a controlling interest.

69.     The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, Firefly securities were actively traded on the NASDAQ.  While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class.  Record owners and other members of the Class may be identified from records maintained by Firefly or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

70.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

71.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.  Plaintiff has no interests antagonistic to or in conflict with those of the Class.

72.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by Defendants' acts as alleged herein;

- whether statements made by Defendants to the investing public in the Offering Documents for the IPO, or during the Class Period, misrepresented material facts about the business, operations and management of Firefly;

- whether the Securities Act Individual Defendants negligently prepared the Offering Documents for the IPO and, as a result, the Offering Documents contained untrue statements of material fact or omitted to state other facts necessary to make the statements made not misleading, and were not prepared in accordance with the rules and regulations governing their preparation;

- whether the Exchange Act Individual Defendants caused Firefly to issue false and misleading financial statements during the Class Period;

- whether certain Defendants acted knowingly or recklessly in issuing false and misleading financial statements;

- whether the prices of Firefly securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

73.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

74.     Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

- the omissions and misrepresentations were material;

- Firefly securities are traded in an efficient market;

- the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;

- the Company traded on the NASDAQ and was covered by multiple analysts;

- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

- Plaintiff and members of the Class purchased, acquired and/or sold Firefly securities between the time the Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

75.    Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

76.    Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

## COUNT I

### (Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder Against the Exchange Act Defendants)

77.    Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

78.    This Count is asserted against the Exchange Act Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

79.     During the Class Period, the Exchange Act Defendants engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and courses of business which operated as a fraud and deceit upon Plaintiff and the other members of the Class; made various untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and employed devices, schemes and artifices to defraud in connection with the purchase and sale of securities.  Such scheme was intended to, and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of Firefly securities; and (iii) cause Plaintiff and other members of the Class to purchase or otherwise acquire Firefly securities and options at artificially inflated prices.  In furtherance of this unlawful scheme, plan and course of conduct, the Exchange Act Defendants, and each of them, took the actions set forth herein.

80.     Pursuant to the above plan, scheme, conspiracy, and course of conduct, each of the Exchange Act Defendants participated directly or indirectly in the preparation and/or issuance of the quarterly and annual reports, SEC filings, press releases and other statements and documents described above, including statements made to securities analysts and the media that were designed to influence the market for Firefly securities.  Such reports, filings, releases and statements were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about Firefly's finances and business prospects.

81.     By virtue of their positions at Firefly, the Exchange Act Defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiff and the other members of the Class, or, in the alternative,

the Exchange Act Defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to the Exchange Act Defendants. Said acts and omissions of the Exchange Act Defendants were committed willfully or with reckless disregard for the truth. In addition, each of the Exchange Act Defendants knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

82.    Information showing that the Exchange Act Defendants acted knowingly or with reckless disregard for the truth is peculiarly within the Exchange Act Defendants' knowledge and control. As the senior managers and/or directors of Firefly, the Exchange Act Individual Defendants had knowledge of the details of Firefly's internal affairs.

83.    The Exchange Act Individual Defendants are liable both directly and indirectly for the wrongs complained of herein. Because of their positions of control and authority, the Exchange Act Individual Defendants were able to and did, directly or indirectly, control the content of the statements of Firefly. As officers and/or directors of a publicly-held company, the Exchange Act Individual Defendants had a duty to disseminate timely, accurate, and truthful information with respect to Firefly's businesses, operations, future financial condition, and future prospects. As a result of the dissemination of the aforementioned false and misleading reports, releases and public statements, the market price of Firefly securities was artificially inflated throughout the Class Period. In ignorance of the adverse facts concerning Firefly's business and financial condition which were concealed by the Exchange Act Defendants, Plaintiff and the other members of the Class purchased or otherwise acquired Firefly securities at artificially inflated prices and relied

upon the price of the securities, the integrity of the market for the securities and/or upon statements disseminated by the Exchange Act Defendants, and were damaged thereby.

84.    During the Class Period, Firefly securities were traded on an active and efficient market.  Plaintiff and the other members of the Class, relying on the materially false and misleading statements described herein, which the Exchange Act Defendants made, issued or caused to be disseminated, or relying upon the integrity of the market, purchased or otherwise acquired shares of Firefly securities at prices artificially inflated by the Exchange Act Defendants' wrongful conduct.  Had Plaintiff and the other members of the Class known the truth, they would not have purchased or otherwise acquired said securities, or would not have purchased or otherwise acquired them at the inflated prices that were paid.  At the time of the purchases and/or acquisitions by Plaintiff and the Class, the true value of Firefly securities was substantially lower than the prices paid by Plaintiff and the other members of the Class.  The market price of Firefly securities declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiff and Class members.

85.    By reason of the conduct alleged herein, the Exchange Act Defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

86.    As a direct and proximate result of the Exchange Act Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases, acquisitions, and sales of the Company's securities during the Class Period, upon the disclosure that the Company had been disseminating misrepresented financial statements to the investing public.

## COUNT II

**(Violations of Section 20(a) of the Exchange Act Against the Exchange Act Individual Defendants)**

87.     Plaintiff repeats and re-alleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

88.     During the Class Period, the Exchange Act Individual Defendants participated in the operation and management of Firefly, and conducted and participated, directly and indirectly, in the conduct of Firefly's business affairs.   Because of their senior positions, they knew the adverse non-public information about Firefly's misstatement of income and expenses and false financial statements.

89.     As officers and/or directors of a publicly owned company, the Exchange Act Individual Defendants had a duty to disseminate accurate and truthful information with respect to Firefly's financial condition and results of operations, and to correct promptly any public statements issued by Firefly which had become materially false or misleading.

90.     Because of their positions of control and authority as senior officers, the Exchange Act Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which Firefly disseminated in the marketplace during the Class Period concerning Firefly's results of operations.   Throughout the Class Period, the Exchange Act Individual Defendants exercised their power and authority to cause Firefly to engage in the wrongful acts complained of herein.   The Exchange Act Individual Defendants, therefore, were "controlling persons" of Firefly within the meaning of Section 20(a) of the Exchange Act.   In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Firefly securities.

91.     Each of the Exchange Act Individual Defendants, therefore, acted as a controlling person of Firefly.  By reason of their senior management positions and/or being directors of Firefly, each of the Exchange Act Individual Defendants had the power to direct the actions of, and exercised the same to cause, Firefly to engage in the unlawful acts and conduct complained of herein.  Each of the Exchange Act Individual Defendants exercised control over the general operations of Firefly and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

92.     By reason of the above conduct, the Exchange Act Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by Firefly.

## COUNT III

**(Violations of Section 11 of the Securities Act Against the Securities Act Defendants)**

93.     Plaintiff repeats and incorporates each and every allegation contained above as if fully set forth herein, except any allegation of fraud, recklessness, or intentional misconduct.

94.     This Count is brought pursuant to Section 11 of the Securities Act, 15 U.S.C. § 77k, on behalf of the Class, against Defendants.

95.     The Offering Documents for the IPO were inaccurate and misleading, contained untrue statements of material facts, omitted to state other facts necessary to make the statements made not misleading, and omitted to state material facts required to be stated therein.

96.     Firefly is the registrant for the IPO.  Defendants named herein were responsible for the contents and dissemination of the Offering Documents.

97.     As issuer of the shares, Firefly is strictly liable to Plaintiff and the Class for the misstatements and omissions in the Offering Documents.

98.     None of the Defendants named herein made a reasonable investigation or possessed reasonable grounds for the belief that the statements contained in the Offering Documents were true and without omissions of any material facts and were not misleading.

99.     By reasons of the conduct herein alleged, each Defendant violated, and/or controlled a person who violated Section 11 of the Securities Act.

100.     Plaintiff acquired Firefly shares pursuant and/or traceable to the Offering Documents for the IPO.

101.     Plaintiff and the Class have sustained damages.  The value of Firefly common stock has declined substantially subsequent to and because of Defendants' violations.

## COUNT IV

**(Violations of Section 15 of the Securities Act Against the Securities Act Individual Defendants)**

102.     Plaintiff repeats and incorporates each and every allegation contained above as if fully set forth herein, except any allegation of fraud, recklessness, or intentional misconduct.

103.     This Count is asserted against the Securities Act Individual Defendants and is based upon Section 15 of the Securities Act, 15 U.S.C. § 77o.

104.     The Securities Act Individual Defendants, by virtue of their offices, directorship, and specific acts were, at the time of the wrongs alleged herein and as set forth herein, controlling persons of Firefly within the meaning of Section 15 of the Securities Act.  The Securities Act Individual Defendants had the power and influence and exercised the same to cause Firefly to engage in the acts described herein.

105.     The Securities Act Individual Defendants' positions made them privy to and provided them with actual knowledge of the material facts concealed from Plaintiff and the Class.

106.    By virtue of the conduct alleged herein, the Securities Act Individual Defendants are liable for the aforesaid wrongful conduct and are liable to Plaintiff and the Class for damages suffered.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

A.    Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B.    Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C.    Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees, and other costs; and

D.    Awarding such other and further relief as this Court may deem just and proper.

**DEMAND FOR TRIAL BY JURY**

Plaintiff hereby demands a trial by jury.

Dated: November 11, 2025                    Respectfully submitted,

                                            THE BRISCOE LAW FIRM, PLLC

                                            */s/ Willie C. Briscoe*
                                            Willie C. Briscoe
                                            State Bar Number 24001788
                                            5473 Blair Rd., Suite 200
                                            Dallas, Texas 75231
                                            Telephone: (972) 521-6868
                                            Facsimile: (281) 254-7789
                                            wbriscoe@thebriscoelawfirm.com

                                            POMERANTZ LLP
                                            Jeremy A. Lieberman
                                            J. Alexander Hood II
                                            600 Third Avenue, 20th Floor
                                            New York, New York 10016
                                            Telephone: (212) 661-1100

Facsimile: (917) 463-1044
jalieberman@pomlaw.com
ahood@pomlaw.com

*Attorneys for Plaintiff*

# CERTIFICATION PURSUANT
# TO FEDERAL SECURITIES LAWS

1.      I, ___Jana K Diamond_____, make this declaration pursuant to

Section 27(a)(2) of the Securities Act of 1933 ("Securities Act") and/or Section 21D(a)(2) of the Securities

Exchange Act of 1934 ("Exchange Act") as amended by the Private Securities Litigation Reform Act of

1995.

2.      I have reviewed a Complaint against Firefly Aerospace Inc. ("Firefly" or the

"Company") and authorize the filing of a comparable complaint on my behalf.

3.      I did not purchase or acquire Firefly securities at the direction of plaintiffs' counsel or in

order to participate in any private action arising under the Securities Act or Exchange Act.

4.      I am willing to serve as a representative party on behalf of a Class of investors who

purchased or otherwise acquired Firefly common stock pursuant and/or traceable to the Offering

Documents issued in connection with the Company's IPO as specified in the Complaint and/or Firefly

securities during Class Period as specified in the Complaint, including providing testimony at deposition

and trial, if necessary.  I understand that the Court has the authority to select the most adequate lead plaintiff

in this action.

5.      The attached sheet lists all of my transactions in Firefly common stock pursuant and/or

traceable to the Offering Documents issued in connection with the Company's IPO as specified in the

Complaint and Firefly securities during Class Period as specified in the Complaint.

6.      During the three-year period preceding the date on which this Certification is signed, I have

not served or sought to serve as a representative party on behalf of a class under the federal securities laws.

7.      I agree not to accept any payment for serving as a representative party on behalf of the

Class as set forth in the Complaint, beyond my pro rata share of any recovery, except such reasonable costs

and expenses directly relating to the representation of the class as ordered or approved by the Court.

8.    I declare under penalty of perjury under the laws of the United States of America that the

foregoing is true and correct.

Executed ___10/28/2025_____
                 **(Date)**

DocuSigned by:

*Jana Diamond*
2D2AD4CE95C7444...
_____
                              **(Signature)**

Jana K Diamond
_____
                      **(Type or Print Name)**

**Firefly Aerospace Inc. (FLY)**                                      **Jana K Diamond**

### List of Purchases/Acquisitions and Sales

| Transaction Type | Date | Number of Shares/Unit | Price Per Share/Unit |
|---|---|---|---|
| Purchase/Acquisition | 8/7/2025 | 5 | $70.0000 |
| Purchase/Acquisition | 8/7/2025 | 5 | $64.1640 |
| Purchase/Acquisition | 9/30/2025 | 7 | $29.2500 |
| Purchase/Acquisition | 9/30/2025 | 8 | $29.2488 |